UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INTERNET PAYMENTS PATENTS LTD.,

Plaintiff,

v.

PAYPAL INC,

Defendant.

Case No.  25-cv-00380-SVK

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 92

Plaintiff Internet Payments Patents Ltd. ("IPPL") alleges that Defendant PayPal Inc. infringes several claims of U.S. Patent No. 7,483,858. Dkt. 2 (First Amended Complaint or "FAC").  The FAC originally also included claims for misappropriation of trade secrets under the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act, but IPPL has dismissed those claims.  Dkt. 120.  All Parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. 86, 87, 89.

Now before the Court is PayPal's motion to dismiss the sole remaining claim in the FAC: IPPL's claim for patent infringement.  Dkt. 92.  PayPal argues that the '858 patent fails to recite patent-eligible subject matter under 35 U.S.C. § 101.  *Id*.  The Court held a combined hearing on PayPal's motion to dismiss and on claims construction, with the benefit of full briefing by the Parties on both matters, on November 20, 2025.  The Court also held a technical tutorial on November 13, 2025.  Having considered the Parties' submissions and arguments at the hearings, the relevant law, and the record in this case, the Court **GRANTS** PayPal's motion to dismiss **WITHOUT LEAVE TO AMEND**.  As a matter of law, the asserted claims of the '858 patent are ineligible for patent protection under 35 U.S.C. § 101.

United States District Court
Northern District of California

## I.    BACKGROUND

### A.    The '858 Patent

U.S. Patent No 7,483,858 (the "'858 patent"), entitled "Network-Based System," was issued on June 27, 2009.  Dkt. 2-1.  IPPL is the owner by assignment of the '858 patent. Dkt. 2 ¶ 14.  The specification of the '858 patent explains that the patent "relates to a method of conducting a transaction in a trading system."  Dkt. 2-1 at 1:17-18.  The specification further explains that "[t]he invention is particularly directed to a trading system where a merchant sends goods and/or services to a customer when the customer is generally located remotely from the merchant" and "is also directed towards providing a system for carrying out such transactions." *Id.* at 1:18-22.  The specification notes that "[t]he invention is particularly directed to the carrying out of the financial transactions and is not concerned particularly with the actual method of trading."  *Id.* at 1:23-25.

The '858 patent acknowledges the availability of many prior art payment systems and prior art systems and methods of trading over the Internet.  *See, e.g., id.* at 1:29-2:7.  The '858 patent explains that these prior art systems and methods pose various risks to both merchants and consumers, including risks to merchants of fraud and abuse stemming from their inability to authenticate all credit card transactions and risks to consumers of possible fraudulent use of credit card numbers provided to merchants and risks stemming from consumers' loss of anonymity. *See, e.g., id.* at 1:60-3:27.  The stated object of the '858 patent is "providing efficient and secure transaction settlement and accounting procedures" that will overcome such problems.  *Id.* at 3:52-54.

The '858 patent seeks to achieve this objective through a method and system utilizing a customer accounts server (CAS), a merchant accounts server (MAS), and a system services server (SSS).  *See generally id.* at 3:58-7:2.  In general, after the customer communicates an intent to make a purchase, the merchant issues a "merchant transaction identifier number and payment request," while the customer and merchant each send acceptance messages to their respective account servers.  *Id.* at 4:1-22; *see also* Dkt. 98 (IPPL's Opp. to Motion to Dismiss) at 11.  The MAS then matches the payment acceptance message with the merchant transaction identifier and

2

United States District Court
Northern District of California

the payment request and sends instructions to the SSS to cause payment to be made. *Id.* "In this way, a secure system has been provided in the sense that the customer has not identified himself or herself in any way to the merchant" and at the same time "confirmation of the transaction has been received by the merchant and the merchant can be sure that the account will be paid." Dkt. 2-1 at 4:23-27.

The specification of the '858 patent describes Figure 2 as illustrating "some of the steps that are carried out, not necessarily all of them are carried out with each transaction, however, the steps are laid out and describe, in broad outline, the method according to the present invention." *Id.* at 8:38-42. Figure 2 is as follows:



Fig. 2

////

////

////

////

////

3

United States District Court
Northern District of California

IPPL alleges that PayPal infringes claims 1, 2, 7, and 8 of the '858 patent.  Dkt. 2 ¶ 71.

Claim 1 recites:

> A method of conducting a transaction in a trading system, where a merchant sends any of goods and services to a customer, using a customer accounts server; a merchant accounts server, a system services server; a merchant computer having an associated merchant account; a customer computer having an associated customer account; and a telecommunications network interconnecting the customer accounts server, the merchant accounts server, the system services server, the merchant computer, and the customer computer, each having a unique identifier for contact within the telecommunications network, the method comprising the steps of:
>
> > the customer computer opening communications with the merchant computer,
> >
> > the customer computer communicating its intention to purchase from the merchant computer, the customer computer not requiring installation of any new software to communicate its intention to purchase from the merchant computer, the customer computer not revealing any information usable to secure customer payment to the merchant computer;
> >
> > the merchant computer sending a merchant transaction identifier number and payment request to the customer computer;
> >
> > the customer computer initiating contact with the customer accounts server and sending to the customer accounts server a customer transaction acceptance message which includes the merchant transaction identifier number and the payment request;
> >
> > the merchant computer initiating contact with the merchant accounts server and sending to the merchant accounts server a merchant transaction acceptance message including the merchant transaction identifier number and the payment request;
> >
> > the customer accounts server initiating contact with the merchant accounts server and sending to the merchant accounts server a payment acceptance message including the merchant transaction identifier number and the payment request;
> >
> > the merchant accounts server matching the merchant transaction acceptance message received from the merchant computer and the payment acceptance message received from the customer accounts server, and
> >
> > the merchant accounts server sending instructions to the system services server to cause payment to the merchant in accordance with an agreed settlement procedure having agreed payment rules.

Dkt. 2-1 at 18:9-55.

4

Claim 2 recites:

A method of conducting a transaction in a trading system, where a merchant sends any of goods and services to a customer, using a customer accounts server; a merchant accounts server, a system services server; a merchant computer having an associated merchant account; a customer computer having an associated customer account and a telecommunications network interconnecting the customer accounts server, the merchant accounts server, the system services server, the merchant computer, and the customer computer, each having a unique identifier for contact within the telecommunications network, the method comprising the steps of:

the customer computer opening communications with the merchant computer;

the customer computer communicating its intention to purchase from the merchant computer, the customer computer not requiring installation of any new software to communicate its intention to purchase from the merchant computer, the customer computer not revealing any information usable to secure customer payment to the merchant computer;

the merchant computer sending a merchant transaction identifier number and payment request to the customer computer;

the customer computer initiating contact with the customer accounts server and sending to the customer accounts server a customer transaction acceptance message which includes the merchant transaction identifier number and the payment request;

the customer computer accepting the transaction by sending an acknowledgment message to the merchant computer;

the merchant computer initiating contact with the merchant accounts server and sending to the merchant accounts server a merchant transaction acceptance message including the merchant transaction identifier number and the payment request;

the customer accounts server initiating contact with the merchant accounts server and sending to the merchant accounts server a payment acceptance message including the merchant transaction identifier number and the payment request;

the merchant accounts server matching the merchant transaction acceptance message received from the merchant computer and the payment acceptance message received from the customer accounts server; and

the merchant accounts server sending instructions to the system services server to cause payment to the merchant in accordance with an agreed settlement procedure having agreed payment rules.

Dkt. 2-1 at 18:56-19:38.

5

Claim 7 recites:

A trading system for carrying out a transaction between a merchant and a customer over a communications network, the system comprising:

a system services server,

a customer accounts server for connection to a customer computer, and

a merchant accounts server for connection to a merchant computer,

the merchant accounts server being configurable to receive a merchant transaction acceptance initiated by the merchant computer that includes a merchant transaction identifier number and a payment request;

the customer accounts server being configurable to receive a customer transaction acceptance initiated by the customer computer that includes the merchant transaction identifier number and the payment request, the merchant transaction identifier number and the payment request having been received by the customer computer from the merchant computer upon the customer computer communicating an intent to purchase from the merchant computer, the customer computer not requiring installation of any new software to communicate its intention to purchase from the merchant computer, the customer computer not revealing any information usable to secure customer payment to the merchant computer; and

the system services server being configurable to initiate payment to the merchant on behalf of the customer upon the merchant transaction acceptance matching the customer transaction acceptance.

Dkt. 2-1 at 20:3-33.

Claim 8 recites:

A method of conducting a transaction in a trading system, where a merchant sends any of goods and services to a customer, using a customer accounts server; a merchant accounts server, a system services server; a merchant computer having an associated merchant account; a customer computer having an associated customer account; and a telecommunications network interconnecting the customer accounts server, the merchant accounts server, the system services server, the merchant computer, and the customer computer, each having a unique identifier for contact within the telecommunications network, the method comprising the steps of:

the customer computer opening communications with the merchant computer,

the customer computer communicating its intention to purchase from the merchant computer;

6

United States District Court
Northern District of California

> the merchant computer sending a merchant transaction identifier number and payment request to the customer computer;
>
> the customer computer initiating contact with the customer accounts server and sending to the customer accounts server a customer transaction acceptance message which includes the merchant transaction identifier number and the payment request;
>
> the merchant computer initiating contact with the merchant accounts server and sending to the merchant accounts server a merchant transaction acceptance message including the merchant transaction identifier number and the payment request;
>
> the customer accounts server initiating contact with the merchant accounts server and sending to the merchant accounts server a payment acceptance message including the merchant transaction identifier number and the payment request;
>
> the merchant accounts server matching the merchant transaction acceptance message received from the merchant computer and the payment acceptance message received from the customer accounts server, and
>
> the merchant accounts server sending instructions to the system services server to cause payment to the merchant in accordance with an agreed settlement procedure having agreed payment rules.

Dkt. 2-1 at 20:34-21:8.

### B.      Procedural Background

IPPL originally filed this action in the Western District of Texas in January 2024, and it filed the FAC in February 2024, alleging that certain of PayPal's products and processes, including without limitation "web- and app-based PayPal payments platforms that are accessible by web browsers and PayPal's Android and iOS applications and related software," practice the '858 patent.  Dkt. 2 ¶ 39; *see also* Dkt. 2-2.  That court transferred the case to this District in January 2025.  Dkt. 60, 61.

At the time of transfer, PayPal had a motion to dismiss pending in the Texas district court. Dkt. 16.  Following transfer, by stipulation of the Parties, Judge Richard Seeborg denied that motion to dismiss without prejudice and reassigned the case to the undersigned.  Dkt. 89. Now before the Court is the motion to dismiss filed by PayPal in this District on August 12, 2025. Dkt. 92.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss based on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  In deciding whether the plaintiff has stated a claim, the court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor.  *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B.   Motion to Dismiss based on Challenge to Patent Eligibility under 35 U.S.C. § 101

Patent eligibility "is a question of law, based on underlying facts" that "may be, and frequently has been, resolved on a Rule 12(b)(6) ... motion."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).  Dismissal is appropriate "where the undisputed facts, considered under the standards required by [Rule 12(b)(6)], require a holding of ineligibility under the substantive standards of law."  *Id.*  Those substantive standards are discussed below.

"Although claim construction is often desirable, and may sometimes be necessary, to resolve whether a patent claim is directed to patent-eligible subject matter, the Federal Circuit has explained that 'claim construction is not an inviolable prerequisite to a validity determination

United States District Court
Northern District of California

8

under § 101.'" *Voip-Pal.com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1124 (N.D. Cal. 2019), *aff'd sub nom. Voip-Pal.com, Inc. v. Twitter, Inc.*, 298 F. App'x 644 (Fed. Cir. 2020) (quoting *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)).   "Where the court has a full understanding of the claimed subject matter, the question of patent eligibility may properly be resolved on the pleadings." *Voip-Pal.com*, 375 F. Supp.3d at 1124 (internal quotation marks and citations omitted).

## III.   DISCUSSION

PayPal moves to dismiss on the ground that the claims of the '858 patent are ineligible for patent protection under 35 U.S.C. § 101.  Dkt. 92 at 12-25.[1]  Section 101 "defines the subject matter that may be patented." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  Under Section 101, patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  "These categories are broad, but they are not limitless." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017).  "Laws of nature, natural phenomena, and abstract ideas are not patentable," *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none," *Mayo Collaborative Servs. v. Prometheus Labs.*, *Inc.*, 566 U.S. 66, 70 (2012) (internal quotation marks and citations omitted).  Allowing patent claims for such purported inventions "might tend to impede innovation more than it would tend to promote it." *Mayo*, 266 U.S. at 71.

Courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217.  "At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (internal quotation marks and citations omitted).  Thus, "in applying the § 101 exception, [the Court] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transform[ing] them into a patent-eligible

---

[1] PayPal's motion to dismiss also contains arguments directed to IPPL's trade secret claims, but IPPL has dismissed those claims.  Dkt. 120.

United States District Court
Northern District of California

invention." *Id.* (internal quotation marks and citations omitted).

To draw this distinction, the Court engages in a two-step analysis. First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* If so, the Court then assesses whether the elements of each claim, both individually and as an ordered combination, transform the nature of the claim into a patent eligible application. *Id.* This second step of the analysis is "a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (internal quotation marks and citations omitted).

### A.    *Alice* **Step One**

The Court first analyzes asserted claim 1 under *Alice*. At *Alice* step one, the Court must determine whether claim 1 of the '858 patent is "directed to" a patent-ineligible concept, such as an abstract idea. *Alice*, 573 U.S. at 217. The Court evaluates "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to" an abstract idea. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (internal quotation marks and citations omitted). Finding a claim's focus "necessarily requires some high-level description," but nevertheless the Court must "articulate 'what the claims are directed to' with 'enough specificity to ensure the step one inquiry is meaningful.'" *LaVoult.com, LLC v. Meta Platforms, Inc.*, 777 F. Supp. 3d 1072, 1078 (N.D. Cal. 2025) (quoting *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

PayPal contends that the "clear focus" of the asserted claims in the '858 patent is "the abstract idea of facilitating purchases using an intermediary." Dkt. 92 at 18. IPPL argues that PayPal's framing of the claims is an "oversimplification" that "ignores the asserted claims' specific technical improvements outlined above, including the algorithms and specific architecture for carrying out those algorithms (*i.e.*, the CAS, MAS, and SSS) to maintain customer anonymity

United States District Court
Northern District of California

and prevent credential disclosure to merchants." Dkt. 98 at 15. IPPL's "oversimplification" argument primarily concerns the issue of whether the focus of the asserted claims is an abstract idea, but the Court must first decide what claim 1 is "directed to," focusing on the claim language, "as informed by the specification." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023).

Considering the language of claim 1 of the '858 patent —as informed by the specification—the Court finds that claim 1 is directed to a method of exchanging and matching messages from the customer and merchant to allow the merchant to obtain payment authorization without obtaining identifying information about the customer (such as credit card number), in order to mitigate risks of online transactions. *See generally* Dkt. 2-1 at 18:9-55; *see also id.* at 14:15-22 (explaining that "in essence, the invention is a relatively simple system of tracking and recording the payments due in respect of internet type transactions where the customer is located remotely from the merchant and further, the nature of the transaction is not such that at least initially the customer's details such as name and address are revealed to the merchant. In effect, the customer accounts server acts as an intermediary between the customer and the merchant."); *id.* at 16:47-51 ("In essence, the invention provides means for agreeing a transaction between a merchant and a customer, coding said agreed transaction, the customer and merchant each approving the coded transaction with their local accounts servers, and the local accounts servers effecting the transaction.").

Next, the Court determines whether this focus is an abstract idea. Neither the Supreme Court nor the Federal Circuit has "established a definitive rule to determine what constitutes an 'abstract idea'" as opposed to a concept that is sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework. *See Enfish*, 822 F.3d at 1334; *see also Twilio*, 249 F. Supp. 3d at 1137. The Federal Circuit has also declined to read *Alice* to broadly hold that all improvements in computer-related technology, whether hardware of software, are "inherently abstract." *Enfish*, 822 F.3d at 1335. For example, where "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity," the Federal Circuit has held that the claims are "not

directed to an abstract idea within the meaning of *Alice*." *Id.* at 1336; *see also Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022) ("If the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process or the underlying operation of a machine," the claim succeeds at *Alice* step one as patent-eligible).

PayPal argues that claim 1 is directed to an abstract idea because it "do[es] not provide a solution of a technological problem or an improvement in computer or network functionality," but instead "do[es] nothing more than use an intermediary—a bank—to pay a seller upon the buyer and seller forwarding the same transaction identifier and payment amount to the bank's servers in order to maintain buyer anonymity and avoid transmitting payment information to the seller." Dkt. 92 at 19 (internal quotation marks and citations omitted). PayPal's support for this argument and IPPL's arguments in response are discussed in the following sections.

### 1.      PayPal's Western Union analogy

PayPal supports its position that claim 1 is directed to an abstract idea by arguing that the process set forth in claim 1 is "no different conceptually from paying for a purchase using a money transfer service, such as Western Union." Dkt. 92 at 19-20. PayPal describes the process of paying for a purchase using Western Union as follows: (1) a buyer in a first location (*e.g.*, New York) places an order with a seller in a second location (*e.g.*, Los Angeles); (2) the seller gives the buyer the seller's name to pay for the order; (3) the buyer goes to the New York branch of a money transfer service such as Western Union and provides the seller's name as the recipient to the agent; (4) the Western Union branch in New York forwards the seller's name received from the buyer to the Western Union branch in Los Angeles; (5) the seller goes to the Western Union branch in Los Angeles and provides his or her name (ID) to verify the recipient name; (6) the Western Union branch in Los Angeles matches the names received from the seller and the Western Union branch in New York; and (7) in the case of a match, the Western Union branch in Los Angeles pays the seller. *Id.*

IPPL argues that the Court should "ignore" PayPal's analogy (*see* Dkt. 98 at 18-19), but that runs counter to the Federal Circuit's direction that "[a] claimed method's similarity to fundamental ... practices long prevalent is [a] clue that the claims may be abstract and

unpatentable." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (internal quotation marks and citations omitted). IPPL also attempts to distinguish the Western Union process on the grounds that "Western Union actually warns its customers of fraud related to online purchases, cautioning them only 'to send money to your friends and family.'" Dkt. 98 at 18-19. IPPL's point appears to be that Western Union advises its customers not to send money using the service to persons unknown to the sender, such as the seller in PayPal's example, but this does not address the parallel PayPal seeks to draw.

Even so, PayPal's analogy to Western Union does not carry the weight PayPal seeks to place upon it. Among other distinctions between the Western Union process as described by PayPal and the process claimed in claim 1 of the '858 patent, Western Union's process does not appear to involve the matching of coordinated dual acceptance messages (one originating with the customer and one originating with the merchant) because the seller provides identifying information directly to the buyer. As a result, there is no "coordinated dual acceptance" of messages and no matching of such messages. Accordingly, the Court does not find the Western Union analogy particularly persuasive.

### 2.   Comparison of claim 1 to claims held to be abstract in other cases

To determine whether a claim's focus is an abstract idea, the Federal Circuit also instructs courts to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. PayPal supports its argument that claim 1 is directed to an abstract idea by identifying numerous other cases in which the Supreme Court, the Federal Circuit, and district courts have "consistently found similar claims covering facilitating purchases and other financial transactions using intermediaries directed to abstract ideas." Dkt. 92 at 20-22 and cases cited therein. Similarities between claim 1 and claims that have been held to be abstract in other cases make this argument far more persuasive than PayPal's Western Union analogy.

PayPal particularly emphasizes the Federal Circuit's 2021 decisions in *Universal Secure Registry v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021) and *Boom! Payments, Inc. v. Stripe*, 839 F. App'x 528 (Fed. Cir. 2021). The patent claims at issue in *Universal Secure Registry*

13

attempted to address the problem of purchasers who "may not always want to disclose their personal information during financial transactions" by setting forth "an identification system that will enable a person to be identified or verified … an/or authenticated without necessitating the provision of any personal information." 10 F.4th at 1348. A representative claim in that case claimed the following method: "(1) 'receiving' a transaction request with a time-varying multicharacter code and 'an indication of' the merchant requesting the transaction; (2) 'mapping' the time-varying multicharacter code to the identity of the customer in question; (3) 'determining' whether the merchant's access to the customer's secure data complies with any restrictions; (4) 'accessing' the customer's account information; (5) 'providing' the account identifying information to a third party without providing that information to the merchant; and (6) 'enabling or denying' the merchant to perform the transaction without obtaining knowledge of the customer's identifying information." *Id.* at 1349. The Federal Circuit held at *Alice* step one that the claim was directed to an abstract idea because it "simply recite[s] conventional actions in a generic way (*e.g.*, receiving a transaction request, verifying the identity of a customer and merchant, allowing a transaction) and do[es] not purport to improve any underlying technology." *Id.* (internal quotation marks and citations omitted). In reaching this conclusion, the court relied on another case in which it had found to be abstract claims that "broadly recited 'receiving' identity data of a client computer, 'authenticating' the identity of the data, 'authorizing' the client computer, and 'permitting access' to the client computer," even though the court noted that the claims in the two cases had some differences. *Id.* at 1347, 1349 (citing *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017)).

In *Boom! Payments*, the Federal Circuit evaluated patent claims for Internet-based systems and methods that "facilitate[] payments between buyers and sellers" in which: (1) The buyer initiates the transaction by "provid[ing] payment information to the system, such as credit or debit card information, which is stored in a database"; (2) "A unique 'buyer identifier' is then generated and provided to the buyer"; (3) "Once the transaction has been consummated, such as when the buyer and seller physically meet and the buyer accepts the items from the seller, the buyer provides the buyer identifier to the seller"; (4) "The seller then provides the buyer identifier to the

14

United States District Court
Northern District of California

online marketplace as evidence that the transaction has been consummated"; and (5) "[P]ayment is authorized." 839 F. App'x at 529-30. The Federal Circuit held that the claims were directed to "the abstract idea of payment escrow" because "[t]hey only describe steps of passing information back and forth by a computer." *Id.* at 532. The patentee argued that the use of the buyer identifier was a "technological improvement over prior art systems for confirming and processing online payments" because it "remov[ed] the need for any static buyer payment information, such as credit card numbers." *Id.* at 532-33. The Federal Circuit rejected this argument, holding that "use of an identification code known only to the buyer and the third party to verify a transaction could be performed just as readily without the use of computers and cannot be said to be a 'technological' solution that improves the functioning of a computer system." *Id.* at 532.

Thus, in *Universal Secure Registry*, *Boom! Payments*, and other cases cited by PayPal, courts have held that methods to facilitate online transactions through the non-disclosure of payment credentials are directed to an abstract idea. Similar to the patent claims found abstract in those cases, claim 1 in this case sets forth an abstract method of exchanging and matching identifying information other than a credit card number in order to facilitate online transactions.

### 3.    IPPL's characterization of claim 1 as an algorithm

IPPL attempts to distinguish the cases cited by PayPal on the grounds that the claims of the '858 patent are "materially narrower," more "concrete and specific," and "more technical" than the claims found to be abstract in those cases. Dkt. 98 at 18. In particular, IPPL emphasizes that "the '858 Patent claims require the algorithms and three-server system …" Dkt. 98 at 18; *see also id.* at 14 (characterizing the method of claim 1 as an "algorithm" that is executed by "systems").

IPPL argues, correctly, that "software and the algorithms that comprise them can be patent-eligible inventions." *See* Dkt. 127 (11/20/25 Hrg. Tr. at 26:19-21); *see also Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1304 (Fed. Cir. 2018) ("Our cases confirm that software-based innovations can make 'non-abstract improvements to computer technology' and be deemed patent-eligible subject matter at step 1" (citing *Enfish,* 822 F.3d at 1335-36)); *RecogniCorp LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("not all claims in all software patents are necessarily directed to an abstract idea"). PayPal does not disagree that software algorithms

15

United States District Court
Northern District of California

can be patentable in certain cases.  Dkt. 127 (11/20/25 Hrg. Tr.) at 50:4-6.

Nevertheless, "[g]eneralized steps to be performed on a computer using conventional computer activity are abstract."  *RecogniCorp LLC*, 855 F.3d at 1326 (quoting *Enfish*, 822 F.3d at 1338).  For example, in *In re TLI Communications LLC Patent Litigation*, the Federal Circuit held that a patent claim for taking digital images using a telephone, storing the images, then transmitting the images to a server which receives the images failed step one of *Alice* because the claim failed to provide technical details for the components and instead "predominately describes the system and methods in purely functional terms" involving functions that were generic to a computer.  823 F.3d 607, 610, 612 (Fed. Cir. 2016).  In *Boom! Payments*, the Federal Circuit held that the claims were not saved from abstraction by the alleged "specificity" in describing steps of receiving a buyer's payment information and thereafter, upon a later receipt of a request from the buyer to purchase an item online, generating a transaction-specific buyer acceptance identifier that is then used not only in lieu of the buyer's payment info but also as the means for the seller to indicate confirmation of the transaction when the seller later returns a corresponding identifier. 839 F. App'x at 532.  "[T]hese steps only explicate the necessary steps of an escrow arrangement and do not change the direction of the claims."  *Id.* at 532-33.

Claim 1 of the '858 patent describes the claimed invention using broad, generic functional terms such as exchanging information between various "computers" and "servers" over a "telecommunications network" but fails to identify with any technical specificity how those ends are achieved.  Claim 1 "recite[s] the *what* of the invention, but none of the *how* that is necessary to turn the abstract ideas into a patent-eligible application."  *Voip-Pal.com,* 375 F. Supp. 3d at 1132-33 (quoting *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016), *cert. den.*, 137 S. Ct. 1230 (2017)) (emphasis in original).

Indeed, the specification largely eschews any particular technical implementation of the invention:

> Thus, for example, reciting that the trading system comprises a customer accounts server; a merchant accounts server; a system services server; merchant computers; customer computers; and a telecommunications network interconnecting the servers and the computers, each computer and server having a unique identifier for contact

16

within the telecommunications network, is not to be considered restrictive in any way of the number and arrangement of servers which may be used.

Dkt. 2-1 at 8:24-32; *see also, e.g., id.* at 7:58-64 ("it will be appreciated that a number of merchants might be all connected to one merchant accounts server and another number of merchants connected to another merchant accounts server. Further, some of the customer's computers may be connected to one customer accounts server and others to another customer accounts server"); *id.* at 8:6-9 (with reference to Fig. 1, stating that the merchant accounts server and the customer account server are separate servers and "[a]lthough they may be provided on the one computer, they are maintained separately but could equally well be provided on different computers"); *id.* at 14:35-38 ("the system services server may in fact be in the same organization as both the merchant accounts server and the customer accounts server or equally well may be a totally unrelated server"); *id.* at 16:10-12 ("many types of computer may be used, not just simply a desktop computer or portable computer but can be any suitable arrangement");

The specification also explains the steps of the claimed methods themselves and how they are performed in highly flexible terms. *See, e.g.,* Dkt. 2-1 at 4:63-5:4 (in addition to transaction acceptance message and payment acceptance message, "[v]arious other messages may be sent" and "[v]arious ways of crediting the merchant account and debiting the customer account may be used"); *id.* at 6:26-38 ("Many settlement procedures may be used," giving examples); *id.* at 8:33-35 ("It will be appreciated that there are many ways of carrying out the invention and there are many checks and verifications that must be carried out . . . "); *id.* at 8:38-42 ("Referring to FIG. 2, there is illustrated some of the steps that are carried out, not necessarily all of them are carried out with each transaction . . . "); *id.* at 12:4-9 (describing certain steps referred to in Figs. 3 and 4 as "optional" and stating that "[h]ow the merchant gets paid again is a question entirely relating to how the system is set up and does not impinge on the operation of this invention"); *id.* at 14:43-51 ("When there is established a merchant account in the system services server, the system services server and the merchant will reach some agreement as to the manner in which the account is to be drawn down. It may, for example, be drawn down by the merchant having a direct transfer of funds to a merchant's own separate bank account on a daily basis, or alternatively, the merchant may use the account established by the system services server as a bank account"); *id.* at 14:52-

15:3 ("with the customer accounts server and the account established by the customer accounts server for each customer, it can be operated in many ways," giving examples); *id.* at 15: 10-14 ("It will also be appreciated that many of the steps laid out above are not always necessary to carry out the invention and that in certain other circumstances, additional steps may be carried out"); *id.* at 16:18-22 ("many of the computations will be either stored on a computer in the possession of the customer, or alternatively may be stored on a separate computer operated by the system services server, or more likely by the customer accounts server").

The claim is not saved from abstraction by IPPL labeling it an "algorithm." *See, e.g., PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316–17 (Fed. Cir. 2021) ("[W]e have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category" (citation omitted)); *Voip-Pal.Com*, 375 F. Supp. 3d at 1130 (holding that algorithms carried out by a routing controller implemented via generic computer means and components were abstract). Claims that focus on "mere automation of manual processes using generic computers" fail *Alice* step one. *PersonalWeb,* 8 F.4th at 1318; *see also id.* at 1316 (that a claim is directed to mental processes that can be performed in the human mind or using a pencil and paper is a sign of abstraction). Here, the method that is the subject of Claim 1 is abstract, regardless of whether the method is properly characterized as an "algorithm."

Cases cited by IPPL in support of its argument that claim 1 is not abstract are distinguishable because the patent claims in those cases were directed to specific improvements to the way computers operate. *See* Dkt. 98 at 8 (citing *Enfish*, 822 F.3d at 1335-36 and *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1257-59, 1264-65 (Fed. Cir. 2014)). For example, *Enfish* involved "several patents related to a 'self-referential database'" that had "two features not found in traditional databases": "first the self-referential model can store all entity types in a single table, and second the self-referential model can define the table's columns by rows in that same table." *Id.* at 1329, 1332. "The patents [taught] that multiple benefits flow from this design" including "faster searching," "more effective storage of data," and "more flexibility in configuring the database." *Id.* at 1333. Because "the self-referential table recited in the claims on

United States District Court
Northern District of California

appeal [was] a specific type of data structure designed to improve the way a computer stores and retrieves data in memory," the Federal Circuit concluded the claims at issue were not directed to an abstract idea. *Id.* at 1339. In doing so, the Federal Circuit distinguished claims "directed to an improvement in the functioning of a computer"—like the ones before it—from claims that "simply add[ ] conventional computer components to well-known business practices." *Id.* at 1338.

Likewise, in *DDR Holdings*, the Federal Circuit affirmed the district's court's denial of a motion for judgment as a matter of law that claims were invalid under section 101. 773 F.3d at 1259. The Federal Circuit held that the claims at issue, which were directed to systems and methods of generating a composite web page that combines certain visual elements of a "host" website with content of a third-party merchant, "stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* at 1257. "Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* The Federal Circuit drew the same distinction as in *Enfish* between claims directed to improving functioning of computer and those that simply add computer components to a well-known business practice. *See id.*

In this case, drawing all reasonable inferences in IPPL's favor, claim 1 falls into the latter category. The flow of transaction information between various servers described in claim 1 does not improve the functioning of a computer. Whereas the claimed invention in *Enfish* provided benefits such as faster searching and better storage and the claims at issue in *DDR Holdings* "specif[ied] how interactions with the Internet are manipulated to yield a desired result" of retaining website visitors who, under conventional functioning of Internet hyperlink protocol, would have been instantly transported away from a host's website after clicking on an advertisement and activating a hyperlink, the benefits described in the '858 patent's specification stem from the abstract idea itself. *See, e.g.,* Dkt. No. 2-1 at 14:15-22 (explaining that "in essence, the invention is a relatively simple system of tracking and recording the payments due in respect of internet type transactions where the customer is located remotely from the merchant and further, the nature of the transaction is not such that at least initially the customer's details such as

United States District Court
Northern District of California

19

name and address are revealed to the merchant.  In effect, the customer accounts server acts as an intermediary between the customer and the merchant.").

Accordingly, drawing all reasonable inferences in IPPL's favor, claim 1 fails *Alice* step 1 as a matter of law because it is directed to an abstract idea.

### B.    *Alice* Step Two

Patent claims directed to an abstract idea nevertheless may be patentable if the claim elements, considered either individually or as an "ordered combination," contain an "inventive concept." *Alice*, 573 U.S. at 217, 221, 225.  The inventive concept must add "significantly more" to the abstract idea, *Mayo*, 566 U.S. at 72-73, enough to "transform" it into a "patent-eligible application" of the abstract idea, *Alice*, 573 U.S. at 221.  The Federal Circuit recognizes that *Alice* step 1 and step 2 "are plainly related" and "overlap[]." *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Accordingly, the Court's consideration of *Alice* step 2 is informed by the foregoing discussion of step 1.

PayPal argues that the intermediated transaction claimed in the '858 patent does not contain any inventive concept relating to how the steps of the claimed transaction are performed and merely recites "generic" computers and servers that are "divorced from any specific technical solution."  Dkt. 92 at 23-25.  IPPL counters by arguing that the algorithms claimed in the '858 patent "present a sequence of steps eliminating the routine and conventional practice of providing card numbers when shopping online."  Dkt. 98 at 16.  IPPL characterizes the "routine and conventional method of shopping online" as involving "users [who] tendered payment by entering a credit or debit card number into a form on the merchant's website and hoped for the best."  Dkt. 98 at 16.  IPPL contends that the algorithms of claims 1, 2, 7, and 8, considered as an ordered combination, "change this routine and conventional process by eliminating the exchange of card numbers" and instead accomplishing payment "when the merchant account server or system services server matches a merchant transaction acceptance message with a payment acceptance message sent by the customer's computer." *Id.; see also id.* ("It is by matching messages that the algorithms recited in claims 1, 2, 7, and 8 therefore provide an inventive concept satisfying *Alice* Step Two").

United States District Court
Northern District of California

IPPL's arguments are unavailing.  Claim 1 describes the necessary order of steps to carry out the abstract idea of facilitating purchases using an intermediary by allowing the merchant to obtain payment authorization without obtaining the customer's payment data (such as credit card number).  The steps are: (1) customer computer opens communications with merchant; (2) customer indicates intent to purchase without disclosing information usable to secure payment; (3) merchant computer sends merchant transaction identifier and payment request to customer; (4) customer computer initiates contact with CAS and sends customer transaction acceptance message including merchant transaction identifier and payment request; (5) merchant computer initiates contact with MAS and sends merchant transaction acceptance message including same merchant transaction identifier and same payment request; (6) CAS initiates contact with MAS and sends payment acceptance message including that same data; and (7) MAS matches merchant acceptance message and payment acceptance message and, upon a successful match, sends instructions to SSS for transaction.  Dkt. 2-1 at 18:9-55.  Such an "ordered combination of steps, which matches the ordered combination of steps traditionally practiced by people manually, are themselves part of the abstract idea and cannot supply the inventive concept."  *People.ai*, *Inc. v. Clari Inc.*, No. 2022-1364, 2022-1366, 2023 WL 2820794, at \*12 (Fed. Cir. Apr. 7, 2023) (internal quotation marks and citation omitted).

The conclusion that claim 1 of the '858 patent does not include an inventive concept does not, as IPPL suggests, improperly "consider each step of the algorithms *in isolation*."  *See* Dkt. 98 at 16 (emphasis in original).  The "ordered combination" of the method steps in claim 1 is itself the abstract idea, and "[i]t has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."  *BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).  Here, claim 1 merely applies the abstract idea using well-understood techniques and is therefore not "transformed into a patent-eligible application of an abstract idea."  *Id.* at 1290-91.

Nor does claim 1's invocation of components and actions such as computers, servers, a telecommunications network, and transmission and matching of messages supply an inventive

21

United States District Court
Northern District of California

concept, particularly when the specification makes clear that such components and actions can take many forms if they are utilized at all. *See, e.g., LaVoult.com*, 777 F. Supp. 3d at 1082-83. IPPL concedes that the components of the system are not themselves patentable. Dkt. 127 (11/20/25 Hrg. Tr.) at 38:20-39:10. "Stating an abstract idea while adding the words 'apply it with a computer' " is not enough for patent eligibility. *Alice*, 573 U.S. at 223; *see also Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 863 (Fed. Cir. 2019) (holding that claim was directed to "the abstract idea of securely processing a credit card transaction" and there was "no inventive concept in the claim's use of a generic payment server to perform well-understood, routine, and conventional activities commonly used in industry") (internal quotation marks and citation omitted)).

IPPL's citations in support of its *Alice* step two analysis are inapposite. *See* Dkt. 98 at 17. In *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, the patent "claim[ed] a technology-based solution ... to filter content on the Internet that overcomes existing problems with other Internet filtering systems" and "improve[d] the performance of the computer system itself." 827 F.3d 1341, 1351 (Fed. Cir. 2016). The Federal Circuit distinguished the *Bascom* patent from patents, like the '858 patent, that claim "an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way." *Id.* at 1352. Likewise, in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016), "the claim's enhancing limitation necessarily require[d] that these generic components operate in an unconventional manner to achieve an improvement in computer functionality."

Although IPPL asserts that courts routinely deny section 101 motions at the motion to dismiss stage "where the patent claims a specific technical improvement and the record is undeveloped on conventionality" (Dkt. 98 at 17), such "purported factual questions" do not necessarily "preclude dismissal ... at the pleadings stage." *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021). Here, there is nothing in the complaint or specification to support a plausible inference the '858 patent improves computer functionality or contains any other inventive step sufficient to satisfy *Alice* step 2. Accordingly, viewing the relevant facts in

the light most favorable to IPPL, there is no plausible case that the '858 patent satisfies the eligibility requirement.

### C.    Claim 1 as Representative Claim

The Court need not individually analyze every claim of a patent under the *Alice* rubric when certain claims are "representative."  *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 668, 685 (N.D. Cal. 2019), *aff'd,* 815 F. App'x 529 (Fed. Cir. June 19, 2020).  "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."  *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1365 (Fed. Cir. 2018).

PayPal's motion to dismiss argues that claim 1 is representative of the other asserted claims:  claims 2, 7, and 8.  Dkt. 92 at 17.  IPPL does not dispute this contention and in its opposition to the motion to dismiss discusses claim 1 as an "illustrative example" of all asserted claims.  Dkt. 98 at 13; *see also id.* at 11 ("claims 1, 2, and 8 recite algorithms improving the functionality of online trading systems and are thus directed to patent eligible concepts" and "[l]ikewise, claim 7 is directed to a system executing the algorithm").  IPPL has not made any "meaningful argument" as to why the claims 2, 7, and 8 are distinct from claim 1 in any way that would alter the *Alice* analysis of those claims.

Accordingly, the Court treats claim 1 as representative of all asserted claims.  The Court holds that all asserted claims are patent-ineligible because, like claim 1, they are directed to an abstract idea and fail to transform that abstract idea into patent-eligible subject matter. *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1375, 1377 (Fed. Cir. 2024) (affirming dismissal of all asserted claims based on finding that representative claims were patent-ineligible).

### D.    Necessity of Claim Construction or Leave to Amend

A patentee cannot avoid grant of a motion to dismiss under section 101 merely by "invok[ing] a generic need for claim construction" but must instead "propose a specific claim construction or identify specific facts that need development and explain why those circumstances

must be resolved before the scope of the claims can be understood for §101 purposes." *Trinity Info Media*, 72 F.4th at 1360–61. "If there are claim construction disputes at the Rule 12(b)(6) stage," the Court "must proceed by adopting the non-moving party's constructions" or "must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Neither side contends that claim construction is necessary before the Court decides PayPal's motion to dismiss.   In its brief and at oral argument, IPPL did not identify a proposed claim construction that would warrant deferring a ruling on the motion to dismiss until after the Court construes the claims. The Parties have already briefed claim construction, and the Court held a hearing.  *See* Dkt. 95, 105, 107, 108, 121.[2]  IPPL has taken the position that the claim terms have their plain and ordinary meaning and thus no construction is necessary.  Dkt. 95-1, 107. Moreover, in opposing the motion to dismiss, IPPL has not identified any way in which the section 101 analysis would be affected even if the Court adopts PayPal's proposed construction of three claim terms at issue.

"[A]lthough leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."  *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023) (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)).  Here, IPPL has not identified any amendments that would overcome the fact that the '858 patent claims ineligible subject matter. And "[n]o amendment to a complaint can alter what a patent itself states." *Sanderling*, 65 F.4th at 706. As discussed above, the application of the *Alice* test to what the '858 patent discloses leads to the conclusion that the asserted patent claims are

---

[2] The three claim terms at issue in the claim construction briefing and hearing are:  (1) "the customer computer not revealing any information usable to secure customer payment to the merchant computer" (Claims 1, 2, 7, and 8); (2) "the merchant accounts server matching the merchant transaction acceptance message received from the merchant computer and the payment acceptance message received from the customer accounts server" (Claims 1, 2, 8) / "upon the merchant transaction acceptance matching the customer transaction acceptance" (Claim 7); and (3) "customer accounts server" / "merchant accounts server" / "system services server" (Claims 1, 2, 7, and 8).  *See* Dkt. 95.

United States District Court
Northern District of California

patent-ineligible.

Accordingly, it is appropriate for the Court to decide the motion to dismiss at this stage. Because amendment would be futile, PayPal's motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND.**

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** PayPal's motion to dismiss **WITHOUT LEAVE TO AMEND**.

SO ORDERED.

Dated: January 27, 2026

_____

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

25